IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| TALISA HOOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 1:15-cv-00085 |
| v. | ) Senior Judge Haynes |
| | ) |
| MELINDA BREWER, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

Plaintiff, Talisa Hood, filed this action under 42 U.S.C. § 1983 against the Defendants Melinda Brewer, William Taylor, Jr.,[1] and Lawrence County, Tennessee ("Lawrence County"). Plaintiff's claims arise from her arrest by Defendant Brewer pursuant to a warrant for aggravated assault, aggravated kidnapping, and vandalism. Plaintiff alleges that Defendant Brewer violated her rights under the Fourth Amendment by maliciously prosecuting Plaintiff despite a lack of probable cause for such criminal prosecution by arresting her without probable cause. Plaintiff also asserts state law claims against Defendant Brewer for outrageous conduct, malicious prosecution, and false imprisonment. Plaintiff alleges that Defendant Lawrence County has a custom, policy, or practice of consciously disregarding the need to train and supervise its employees on unreasonable seizures of persons and such failure constitutes deliberate indifference to Plaintiff's constitutional rights.

Before the Court is Defendants' the motion for summary judgment (Docket Entry No. 20), to which Plaintiff filed a response (Docket Entry No. 32), and the Defendants filed a reply (Docket Entry No. 35).

---

[1]Defendant Taylor was earlier dismissed from this action. (Docket Entry Nos. 7 and 37).

For the reasons set forth below, the Court concludes that the Defendants' motion for summary judgment (Docket Entry No. 20) should be granted as the undisputed facts show ample proof to justify Plaintiff's arrest and subsequent prosecution. Plaintiff has failed to submit proof for a judgment on her claims.

## A. Findings of Fact[2]

On September 27, 2014, Defendant Brewer was dispatched to 654 Rabbit Trail Road in Lawrence County, Tennessee based on a report of a female holding a male at gunpoint. (Docket Entry No. 25, Brewer Declaration, at ¶ 3). Defendant Brewer and Deputy Tracy Odom, Investigator Gary Mills, and Investigator John Myers of the Lawrence County Sheriff's Department arrived at the residence. Id. at ¶¶ 3-4. With the officers' arrival, Brewer approached the south side of the residence and saw an unarmed female, Plaintiff, exiting from the back door. Id. at ¶ 4. The officers seized Plaintiff and Plaintiff then allowed the officers to enter her residence where they searched for the male victim, David Johnston. Id. Johnston was not in the residence. Id. Plaintiff stated that Johnston had gotten involved with a woman named Tina Smith and had been at her house earlier that day. Id. at ¶ 5. Brewer observed a holstered revolver lying on top of a chest of drawers that matched the caller's description of the incident. Id. at ¶ 4.

Brewer and Odom went to Smith's house to investigate further. Id. at ¶ 6. Smith reported the incident to a dispatcher. Id. at ¶ 5. Brewer interviewed Smith who provided a written statement of the events. Id. at ¶ 6. According to Smith, on the evening of September 26, 2014, Johnston arrived at her house in a "frightened state" and told Smith that Plaintiff had held him at gun point for several

---

[2]Because Plaintiff has failed to provide any proof to dispute the Defendants' statement of undisputed facts (Docket Entry No. 23) that is supported by affidavits and exhibits, the Court deems the Defendants' statement of facts undisputed.

2

hours and forced him to make threatening calls to Smith. (Docket Entry No. 25-1, Smith Statement). Smith described Johnston as pale and "almost in [a] panic attack." Id. According to Smith, Johnston stated that Plaintiff held a .22 caliber pistol to his head during his calls to Smith and that, at one point, Plaintiff pulled the hammer. Id. Johnston spent the night at Smith's residence and left the next day around 12:00 p.m. or 1:00 p.m. to pick up his clothes from Plaintiff's house. Id. Smith received another call from Johnston that Plaintiff was "making [Johnston] say bad things to her" and this prompted Smith to call the police about Johnston. Id.

Tifanie Reaves, who resides with Smith, also gave a written statement that Johnston called Smith on September 26, 2014, and Johnston and Plaintiff were rude and "using foul language." (Docket Entry No. 25-2, Reaves Statement). According to Reaves, about thirty minutes later, Johnston arrived at Smith's house "noticabely shaking and shakin up [sic]." Id. Johnston told Reaves that Plaintiff held a gun to his head to explain why he was speaking rudely to Smith. Id. On September 27, 2014, after Johnston returned to Plaintiff's house to pick up some clothes, Plaintiff later telephoned Reaves "cussing and making demands." Id. Plaintiff then hung up on Reaves and Smith decided to call the police. Id.

Brewer then interviewed Johnston and asked Johnston to provide a written statement. (Docket Entry No. 25 at ¶ 7). Because Johnston was visible shaken, Brewer wrote the statement on his behalf. (Docket Entry No. 25-3, Statements of David Johnton). According to Johnston, on Friday, September 26, 2014, Plaintiff and Johnston were at Plaintiff's house when Plaintiff began cursing at him and calling him names. Id. Plaintiff then retrieved her father's gun, a .22 caliber with a black and yellow handle, and pointed the gun at Johnston's head. Id. Johnston told Brewer that the gun was a revolver. Id. Plaintiff then told Johnston to call Smith and demand the payment of money that

3

Johnston loaned to Smith by Monday. Id. Plaintiff then took the telephone from Johnston and argued with Smith. Id. Plaintiff returned the telephone to Johnston and told him to tell Smith to get he the money "ASAP" or Plaintiff would have Johnston "beat Tina's butt." Id. When Plaintiff was on the telephone with someone else and walking near the back of the house, Johnston left through the front door and drove his vehicle to Smith's house where he remained for the night. Id.

The next morning, Johnston spoke to Virginia "Ginny" Foust, a friend of Plaintiff's, on Facebook. Id. Johnston told Foust to tell Smith that he had stayed the night at her cabin on the creek because Plaintiff would be upset if she knew he had stayed the night at Smith's house. Id. Later, Johnston returned to Plaintiff's house to talk to the Plaintiff and to retrieve some of his clothes. Id. Johnston and Plaintiff walked outside where Plaintiff showed him where she had "beat" the windows out of his truck. Id. Plaintiff then told Johnston he could not leave and pointed her .22 caliber gun at Johnston. Id. Plaintiff began tearing things off Johnston's vehicle and called someone to "come and beat [Johnston] up." Id. Johnston was then able to enter his vehicle and drive to Smith's house. Id.

Brewer had Johnston read and review his statement for verification of the facts. (Docket Entry No. 25 at ¶ 7). Johnston told Brewer that the written statement was accurate and signed the statement. Id. Brewer then returned to Plaintiff's house and had Plaintiff provide a written statement of the events. (Docket Entry No. 25 at ¶ 10; Docket Entry No. 25-4, Hood Statement). Foust, who was at Plaintiff's residence, also gave a written statement. (Docket Entry No. 25 at ¶ 10; Docket Entry No. 25-5, Foust Statement).

Brewer contacted Chief Crouch to inform him about the events and completed an incident report when she returned to the Sheriff's department. (Docket Entry No. 25 at ¶ 11; Docket Entry

4

No. 25-6, Incident Report). Based upon her investigation, Brewer believed that probable cause existed to charge Plaintiff with two counts of aggravated assault under Tenn. Code Ann. § 39-13-102; two counts of aggravated kidnapping under Tenn. Code An.. § 39-13-304; and one count of vandalism over $500.00 under Tenn. Code Ann. § 39-14-406. (Docket Entry No. 25 at ¶ 12). Brewer prepared an affidavit stating that she had probable cause to believe these offenses had been committed by Plaintiff and presented her other affidavit to the magistrate in Lawrence County General Sessions Court. (Docket Entry No. 25-7). Based on the affidavits, the magistrate determined that probable cause existed and issued warrants for Plaintiff's arrest on September 27, 2014. Id. Brewer contacted Plaintiff and advised her to report to the Sheriff's department to be served with the warrants. Id. Plaintiff was arrested that day.

At a preliminary hearing on December 12, 2014, Johnston testified, consistent with his written statement prepared by Brewer, that he read and signed the statement as an accurate statement of the events that day. (Docket Entry No. 25 at ¶¶ 13-14). At the conclusion of Johnston's testimony, the judge found that probable cause existed for both counts of aggravated assault, both counts of aggravated kidnapping, and vandalism. Id. at ¶ 15. On January 30, 2015, a grand jury returned indictments on all charges against Plaintiff. (Docket Entry No. 25 at ¶ 16; Docket Entry No. 25-8, Indictments Grand Jury).

Brewer was later informed that she would not be called to testify at Plaintiff's trial because the charges against Plaintiff were being dismissed due to Johnston's refusal to testify at trial. (Docket Entry No. 25 at ¶ 17). On August 18, 2015, the charges against Plaintiff were dismissed, and later expunged. Id. at ¶¶ 17-18.

## B. Conclusions of Law

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment <u>sua sponte</u>, so long as the opposing party was on notice that she had to come forward with all of her evidence." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986). <u>Accord</u>, <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326. Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman, 873 F.2d at 971.

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

477 U.S. at 323.

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards . . . ." Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex, 477 U.S. at 323; Fed. R. Civ. P. 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and] . . . must

'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby, 477 U.S. at 257). Moreover, the Court of Appeals explained that

> [t]he respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted); see also Hutt v. Gibson Fiber Glass Prods., Inc., 914 F.2d 790, 792 (6th Cir. 1990) (quoting Liberty Lobby, 477 U.S. at 251-52) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'").

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law:

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.</u>
>
> \* \* \*
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the</u>

<u>evidence that the plaintiff is entitled to a verdict—"whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

> In ruling on motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated.
>
> It has been stated that: "The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute . . . ."

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citations omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) (citation omitted).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New International Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial

order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). In this district, the parties must provide specific references to the proof upon which they rely. See Local Rule 56.01(c) (requiring each party to provide a statement of undisputed facts to which the opposing party must respond).

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

> 1. Complex cases are not necessarily inappropriate for summary judgment.
>
> 2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.
>
> 4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."
>
> 6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.
>
> 7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.
>
> 8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

For judgment on a claim for malicious prosecution, Plaintiff must prove the following:

(1) that a criminal prosecution was initiated against Plaintiff and the defendant made, influenced, or participated in the decision to prosecute;

(2) there was no probable cause for the criminal prosecution;

(3) as a consequence of the legal proceeding, Plaintiff suffered a deprivation of liberty apart from the initial seizure; and

(4) the criminal proceeding was resolved in Plaintiff's favor.

Robertson v. Lucas, 753 F.3d 606, 616 (6th Cir. 2014) (citing Sykes v. Anderson, 625 F.3d 294, 308-09 (6th Cir. 2010)).

Here, Plaintiff has not presented any proof and the undisputed facts establish that Defendant Brewer had probable cause to arrest Plaintiff. The state magistrate judge's ruling and the grand jury's indictment also reflect that probable cause existed for the charges against the Plaintiff.

For the malicious prosecution claim, here, Plaintiff had an opportunity to litigate probable cause at a preliminary hearing in the prior proceeding, even if the grand jury later chose not to indict, Plaintiff may not relitigate the issue of probable cause in a subsequent action. Franklin v. Messmer, 111 F.App'x 386, 388 (6th Cir. 2004). "The law of our Circuit provides that where 'the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action.'" Smith v. Thornburg, 136 F.3d 1070, 1077 (6th Cir. 1998) (quoting Coogan v. City of Wixom, 820 F.2d 170, 175 (6th Cir. 1987)). On December 12, 2014, the preliminary hearing for the criminal charges against Plaintiff was held. After hearing testimony from Johnston, the court made a finding of probable cause. Plaintiff had a full and fair opportunity to litigate these issues at the preliminary hearing and thus is barred under Franklin from raising this issue in this action.

Moreover, the authority to proceed with charges against Plaintiff is ultimately vested in the District Attorney, who has "the sole duty, authority, and discretion to prosecute criminal matters . . . ." State v. Spradlin, 12 S.W.3d 432, 436 (Tenn. 2000) (citing Ramsey v. Town of Oliver Springs, 998 S.W.2d 207, 209-10 (Tenn. 1999) ("So long as the prosecutor has probable cause to believe that the accused committed an offense, the decision whether to prosecute, and what charge to bring . . . generally rests entirely within the discretion of the prosecution . . . .")). The Court does not discern any facts upon which Plaintiff could support a judgment on her claims.

Defendant Lawrence County may be liable under 42 U.S.C. § 1983, but only for deprivations caused by a policy, custom, or practice of the county. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). Plaintiff "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom," and this may be established by demonstrating "the existence of a policy of inadequate raining or supervision." Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir. 2013) (citation omitted). Liability for inadequate training arises only "where the failure to train amounts to deliberate indifference of the rights of persons with whom the police come into contact." Minick v. Metro. Gov't of Nashville, No. 3:12-cv-0524, 2014 WL 3817116, at *2 (M.D. Tenn. Aug. 4, 2014) (citing Slusher v. Carson, 540 F.3d 449, 457 (6th Cir. 2008)). Deliberate indifference usually evidenced by a "history of abuse" providing notice that the county's training is deficient or "where there is essentially a complete failure to train the police force or training that is so reckless or grossly negligent that future police misconduct is almost inevitable . . . ." Id. (citing Hays v. Jefferson Cnty., Ky., 668 F.2d 869, 874 (6th Cir. 1982)). The inadequate training must be "closely related to or actually caused the Plaintiff's injury." Tuell v. McCormick, No. 3:14-cv-1834, 2015 WL 4727144, at *2 (Aug. 7, 2015) (citing Pinton v. Cnty. of Summit, 540 F.3d 459, 464 (6th Cir. 2008)). Plaintiff lacks any proof for her claim that Defendant Lawrence County failed to adequately supervise, control, and discipline its deputies on seizures and arrests of persons.

Thus, the Court concludes that Plaintiff also lacks any facts for a judgment on her state law claims of outrageous conduct, malicious prosecution, and false imprisonment and the Defendants' motion for summary judgment (Docket Entry No. 20) should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the 10th day of January, 2017.

WILLIAM J. HAYNES, JR.
Senior United States District Judge